**Reginald Wayne MULLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–85–929–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 15, 1987.

I. Nelson Heggen, Houston, for appellant.

Michael J. Guarino, Miguel Martinez, Galveston, for appellee.

Before PRESSLER, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for the offense of aggravated robbery. Following a remand from the Court of Criminal Appeals, Appellant was retried before a jury and found guilty. His punishment, enhanced by one prior felony conviction, was assessed at confinement in the Texas Department of Corrections for life. We affirm.

Appellant presents seven points of error. In his first point of error he challenges the trial court's denial of his motion to dismiss pursuant to the Speedy Trial Act.

Appellant was first convicted of aggravated robbery on November 12, 1982. This conviction was reversed by the First Court of Appeals on appeal because of improper prosecutorial argument. The Court of Criminal Appeals affirmed and on May 31, 1985, remanded the case for a new trial. The State announced ready August 2, 1985, but the defense filed and was granted a motion for a continuance. The case was called again on August 30, 1985. The defense again requested and received a continuance. When the case was called for trial on October 7, 1985, the court discovered that Appellant had not been served with a copy of the indictment. Although he had waived service in his previous trial, Appellant requested service of the new indictment and the court continued the case so that service could be made. Appellant's motion to dismiss for failure to comply with article 32A.02 of the Texas Code of Criminal Procedure, the Speedy Trial Act, was heard and denied on October 14, 1985. Article 32A.02 requires that:

Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;

\* \* \* \* \* \*

Section 2. (b) If a defendant is to be retried ... a criminal action commences for purposes of this article on the date of the ... remand.

Tex.Code Crim.Proc.Ann. art. 32A.02 (Vernon Supp.1986). A declaration by the State that it is ready for trial is a prima facie showing of conformity with the Speedy Trial Act that may be rebutted by defendant by presenting evidence demonstrating that the State was not actually ready for trial during the prescribed time period. *Mendoza v. State*, 636 S.W.2d 198 (Tex.Crim.App. 1982); *Barfield v. State*, 586 S.W.2d 538 (Tex.Crim.App.1979).

 At the hearing on the Motion to Dismiss, Appellant argued that service of the indictment and arraignment are prerequisites to the State's ability to be "ready for trial" within the meaning of article 32A.02. He contends that, since the court did not serve him with a copy of the indictment until October 7, 1985, the earliest he could be arraigned was October 9, 1985. Therefore, Appellant concludes the State could not be "ready" to proceed with the trial until 130 days after the action commenced which was 10 days more than the period allowed by the Speedy Trial Act. We disagree with this contention. "Readiness" under the Speedy Trial Act refers to the prosecution's preparedness for trial and does not encompass the trial court and its docket. *Santibanez v. State*, 717 S.W.2d 326, 329 (Tex.Crim.App.1986); *Barfield v. State*, 586 S.W.2d at 541; *Packen v. State*, 659 S.W.2d 893 (Tex.App.—San Antonio 1983, no pet.). The State's readiness to try the case is not determined by procedural and substantive formalities such as the service of the indictment on the defendant or his arraignment. "The day on which the defendant is arraigned is a matter of the trial court and its docket." *Packen v. State*, 659 S.W.2d at 894. *See also Samora v. State*, 642 S.W.2d 817 (Tex.App.—Tyler 1982, pet. ref'd). The fact that Appellant was not served with the indictment and arraigned within the 120 day period does not rebut the State's announcement of ready.

Appellant also asserts that the periods during which the case was continued should not be excluded from the computation of the 120 day period because they were not granted at the request of Appellant or his counsel.

Article 32A.02, Section 4 provides in pertinent part that:

> In computing the time by which the State must be ready for trial, the following periods shall be excluded:
>
> \* \* \* \* \* \*
>
> (3) a period of delay resulting from a continuance granted at the request or with the consent of the defendant or his counsel, except that a defendant without counsel is deemed not to have consented to a continuance unless the court advised him of his right to a speedy trial and the effect of his consent;

Tex.Code Crim.Proc.Ann. art. 32A.02 § 4(3) (Vernon Supp.1986). Appellant argues that because Mr. Heggen was not formally appointed to represent him until September 4, 1985, he had no authority to request the August 2 and August 30 continuances on behalf of Appellant. Our review of the record reveals that Mr. Frank Crews was appointed to represent Appellant on April 10, 1985. Mr. Heggen, upon the court's inquiry, testified that he works for Mr. Crews and had handled most of Appellant's case in the previous trial and appeal. Further, Mr. James, the assistant district attorney handling the case, testified that in July, 1985, Mr. Heggen held himself out to be representing Appellant and entered into plea negotiations on behalf of Appellant. Mr. Heggen also confirmed that he had approached Mr. James in July, 1985, concerning plea negotiations.

 In reviewing the record, we find that Appellant has failed to make the signed reset forms a part of the record. Therefore, the only evidence before us is the testimony of the attorneys and the docket sheets which reflect that Mr. Crews was appointed to represent Appellant, that the case was "continued by defendant" on August 2, 1985, that upon Mr. Heggen's

request the court formally appointed Mr. Heggen as counsel for Appellant on September 4, 1985. Mr. Crews was then permitted to formally withdraw as attorney for Appellant on September 13, 1985. We hold that Appellant's counsel requested or consented to the continuances and that he was authorized to do so on behalf of Appellant. When these continuances are deducted from the lapsed time, we find that Appellant's trial took place within 120 days after commencement of this action. We further note that violations of the Speedy Trial Act are determined by the date the prosecution is ready for trial not by the date the case is actually tried. *Valadez v. State*, 639 S.W.2d 941 (Tex.Crim.App.1982). Mr. James testified that the State announced ready on August 2, 1985, and was ready to try the case at all times since that date. The period between May 31, 1985 and August 2, 1985 is 63 days—well within the prescribed time period. Therefore, Appellant has failed to rebut the State's announcement of ready and his first point of error is overruled.

In point of error two, Appellant contends that he was denied a fair trial by the trial court's denial of: (1) his motion to suppress the in-court identification of Appellant; (2) his motion to conduct an in-court lineup; and (3) his motion to have an additional person sit at the defense counsel's table. He argues that the pre-trial lineup was impermissibly suggestive and that the testifying witnesses' in-court identification of Appellant as one of the robbers was tainted by this lineup. Appellant argues that because of this impermissibly suggestive lineup, the length of time which elapsed between the commission of the offense and the trial, and the fact that Appellant was the only black man in the courtroom, an in-court lineup or an additional black person seated at the defense table should have been allowed in order to give the witnesses some choice when making the in-court identification.

■ We first note that the trial court is not required to hold an in-court lineup or to force the State to furnish multiperson con-

frontations during trial. *Wrenn v. State*, 478 S.W.2d 98, 100 (Tex.Crim.App.1972); *Baskin v. State*, 672 S.W.2d 312, 314 (Tex. App.—San Antonio 1984, no pet.). Therefore, the trial court did not err in denying the motion for an in-court lineup and the motion to have an additional person at the counsel table. Appellant's argument that the trial court erred in denying his motion to suppress the in-court identification of Appellant as one of the robbers is premised on the theory that the witnesses' in-court identification was based upon an impermissibly suggestive pre-trial lineup rather than their independent recollection of events at the time of the offense.

■ The trial court denied Appellant's motion to suppress the in-court identification after holding a pre-trial hearing. No findings of fact and conclusions of law were filed by the court in regard to this hearing. The court did not rule on Appellant's motion to suppress the pre-trial lineup because the State indicated that it would not be introduced at trial. As a result, the record does not reflect whether the trial court found the lineup procedure improper. The trial court has a unique opportunity to evaluate the witnesses and get a feel for the circumstances of the case. Therefore, the initial determination of the reliability of the in-court identification procedure is within the trial court's discretion and will not be reversed upon appeal absent a clear abuse of that discretion. *Spencer v. State*, 466 S.W.2d 749, 752–753 (Tex.Crim.App.1971); *Martinez v. State*, 437 S.W.2d 842, 848–849 (Tex.Crim. App.1969); *Durrough v. State*, 672 S.W.2d 860, 870 (Tex.App.—Corpus Christi 1984, no pet.).

■ If a pretrial identification procedure is shown at the pretrial hearing to be impermissible and improper, a subsequent in-court identification is not admissible unless the prosecution shows by clear and convincing proof that the in-court identification is not tainted by the improper pretrial procedure and is of independent origin. *Gilbert v. California*, 388 U.S. 263, 272, 87 S.Ct. 1951, 1956, 18 L.Ed.2d 1178, 1185 (1967);

*Martinez v. State,* 437 S.W.2d at 849; *Durrough v. State,* 672 S.W.2d at 870. Although Appellant cites numerous reasons that the pre-trial identification procedure was impermissibly suggestive, we fail to find any evidence in the record to support his contention.

The line-up was held two days after the offense was committed. Officer Jim Davis explained the procedure he used in conducting the lineup. Before Appellant was placed in the lineup, he signed a waiver of his right to have an attorney present. Appellant was then placed in a seven person lineup. All of the people in the lineup were black males who fit the general descriptions of the three robbers given by the robbery victims. The lineup also included at least one other person the same height as Appellant. Appellant wore a shirt with a playboy bunny emblem on the left shoulder when arrested. This shirt matched the description of a shirt worn by one of the robbers. The police gave Appellant another shirt to wear for the lineup to prevent an improper identification. The lineup group was placed on a stage on one side of a plexiglass screen and a group of victims on the other side. The victims were instructed not to speak to one another while viewing the lineup and were questioned individually afterwards. They were not told that a suspect in their case was in the lineup or asked any suggestive questions. The officer simply asked each one, "Do you recognize anyone in that lineup as one of the persons that committed the crime?" Their responses were recorded by Officer Davis on a "show up sheet" as positive, tentative, or negative identifications. Tentative responses were explored to determine the reason for the uncertainty. Six of the eight victims positively identified Appellant as one of the robbers. The other two victims made tentative identifications of Appellant. Officer Davis testified that no one indicated to any of the victims which persons to pick out of the lineup. He further stated that none of the persons in the lineup wore clothing which would make them stand out from the others.

Three of the victims who attended the lineup testified at the trial hearing. Mrs. Sharon Wright testified that none of the men in the lineup wore distinctive clothing, no one told her that suspects in her case were in the lineup, and no one indicated that any particular person should be chosen. Mrs. Wright made a positive identification of Appellant as one of the robbers. Her husband, Mr. William Wright, also testified that nothing in the conduct of the lineup particularly suggested Appellant should be chosen and that no one told him who to identify. Mr. Wright also picked Appellant out of the lineup. Mr. Phillip Cessac was the third victim to testify. His testimony was in accord with that of Mr. and Mrs. Wright. No one suggested any particular individual should be chosen and nothing about the conduct of the lineup made any one of the participants stand out more than the others.

 We hold that the procedure used was not unnecessarily suggestive and that under the circumstances there was no substantial likelihood of misidentification. However, even if the trial court determined that the lineup was improperly suggestive, the record is replete with testimony showing that the in-court identification made by these witnesses had an independent origin in their recollection of the events of the robbery offense and was not based solely on their observation of Appellant in the lineup. The factors the trial court should consider in determining the origin of an in-court identification include: the prior opportunity of the witness to observe the offense; the existence of any discrepancy between any pre-lineup description and the accused's true description; the failure of the witness to identify the accused on a prior occasion, and; the lapse of time between the offense and the lineup identification. *Thompson v. State,* 480 S.W.2d 624, 627 (Tex.Crim.App.1972); *Durrough v. State,* 672 S.W.2d at 869.

Applying these factors to the evidence before us, we hold that the in-court identification of Appellant by each of the three witnesses was of independent origin. Each

of the witnesses had an excellent opportunity to observe the Appellant during the offense. Mrs. Wright testified that she walked into the restaurant while the robbery was in progress. She explained that Appellant took her and the other patrons to the kitchen and held them there. She stated that she got a good look at the robbers because the lighting was very bright. She was two to three feet away from Appellant for approximately five minutes and saw his face from the front and both sides. At the hearing she described Appellant's appearance during the robbery, "He had an Afro that was real long. It had a shiny look to it, and I noticed he also had big black—big eyes." She also stated that he had a small build and was approximately five feet, six inches tall. Appellant wore a black shirt or jacket with a playboy emblem on the shoulder and "was zipped up and the neck was buttoned over." Mrs. Wright's detailed testimony clearly shows that she had an adequate recollection of the robbery to make an in-court identification independent of the line-up observation.

Mr. Wright's testimony also shows that his in-court identification of Appellant was based on his memory of the robbery. During the robbery he observed Appellant's face for about ten minutes in good lighting. He testified that he had a good view of Appellant's face from two to three feet away and that he had no doubt that Appellant was the man who robbed him. He described Appellant's appearance: "His hair had a loose curl and [wet] look to it. He had large eyes and large lips and a light [complection] for a black man." Mr. Wright also recounted the sequence of events during the robbery.

Mr. Cessac testified that he "got a good [sic] look at all three of the men" and that he observed them under good lighting conditions for approximately fifteen minutes from a distance of two to three feet. He had both a side and front view of the face of Appellant. Mr. Cessac is a commercial artist and testified that, "Whenever I see someone, I will look at the eyes, nose structure, and face structure." He explained that in this manner he retained a visual image of the robbers. He gave detailed testimony about the robbery events and stated that he was certain that Appellant was one of the robbers. All three of these witnesses testified that their in-court identifications of Appellant were based on their memory of the robbery and not on the lineup.

A defendant who contends on appeal that the trial court erred in permitting an in-court identification of him must show by clear and convincing evidence that the witness' in-court identification of the defendant as the perpetrator was so tainted by an improper pre-trial identification procedure that it was not of an independent origin. *Jackson v. State*, 628 S.W.2d 446, 448 (Tex.Crim.App.1982); *Durrough v. State*, 672 S.W.2d at 870. We hold that Appellant has failed to carry this burden. Point of error two is overruled.

In point of error three Appellant asserts that the trial court refused to grant Appellant access to the State's file on Appellant's brother and that this constitutes error because the file contained evidence beneficial to Appellant's defense. Appellant's pre-trial discovery motion requested all exculpatory evidence that the State possessed; the contents of the State's file in the case against Appellant's brother, Mr. Cedric Mullen; and any information contributing to the State's decision to dismiss the charges against Cedric Mullen. The State's attorney acquiesced in Appellant's request for exculpatory evidence but objected to the request for the Cedric Mullen file as beyond the scope of "exculpatory" discovery. The trial court ruled as follows:

COURT: Anything exculpatory against this defendant you will furnish him?

STATE: Yes, sir.

COURT: Otherwise, I will deny anything as to the second paragraph.

\* \* \* \* \* \*

DEFENSE: That includes identification of Cedric Mullen as one of the perpetrators of this same offense?

STATE: Anything that would clear this man whether it would imply, indicate, or clear another man, anything that tends to exculpate this man, I would be happy to turn over.

Appellant's argument is that since the three witnesses called to testify by the State picked Cedric Mullen as well as Appellant from the lineup and the charges against Cedric Mullen were subsequently dropped, "the prosecution was in possession of some kind of exculpatory evidence as to Cedric Mullen which, under the circumstances necessarily must apply to his brother as well." He asserts that "any reason the prosecution had for dismissing the charges against a co-indictee with exactly the same elements of proof available against him would, of necessity, bear favorably" on the culpability of Appellant. The record discloses no evidence to support this contention.

Appellant called Cedric Mullen to testify at trial. He testified that he was arrested with Appellant, mistakenly identified, charged with the offense and later released when the State received evidence of misidentification. Appellant did not ask Cedric Mullen what this evidence was or pursue this topic of questioning. The State asserts that Cedric Mullen was able to produce time cards from his place of employment which provided him with an alibi. At trial, Mrs. Wright testified that Appellant and Cedric Mullen possessed similar facial features and that this might account for the misidentification of Cedric Mullen.

 The prosecution, under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is required to disclose evidence favorable to an accused in a criminal case where that evidence is material to the guilt or punishment of the accused. *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196. In order to invoke the *Brady* doctrine, the accused must present evidence that: (1) the prosecution suppressed or withheld evidence; (2) this evidence would have been favorable to the accused; and, (3) this evidence would have been material to the accused's defense. *Young v.*

*State*, 644 S.W.2d 18, 21 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd).

The record reflects that the State agreed to provide Appellant with any exculpatory information in its possession. Although Cedric Mullen was initially identified as one of the robbers, he had an alibi which caused the State to dismiss the charges against him. We find this was not relevant or material to Appellant's culpability.

 The courts have held that a criminal defendant has no constitutional right to inspect the State's file in search of exculpatory material. *Rigsby v. State*, 654 S.W.2d 737 (Tex.App.—Houston [14th Dist.] 1983, no pet.). Further, where there is no showing that matters sought to be discovered are material, the defendant is not entitled to relief on appeal. *Turpin v. State*, 606 S.W.2d 907, 915 (Tex.Crim.App.1980). We also note that Appellant did not include the State's case file on Cedric Mullen in the appellate record. Therefore, Appellant has presented nothing for review and has waived any possible error. *Rigsby v. State*, 654 S.W.2d at 739. Appellant's third point of error is overruled.

Appellant asserts in his fourth point of error that he was deprived of his right to a fair trial by the prosecution's improper jury argument. Appellant contends the prosecutor engaged in a ploy calculated to deprive him of a fair trial by stating in his opening statement that, "the evidence would show that the Defendant was arrested with Mr. and Mrs. Wright's rings in his possession that had been stolen...." Our reading of the record reveals that Appellant has misquoted the State's attorney. The actual statement was:

"[A]nd when the vehicle was found, something else interesting happened. They managed to recover some rings. Does anybody want to guess from whom they were stolen from? Bill Wright, the previous day at the Pizza Hut in Friendswood. And you will see the rings that Mr. Wright has got back on his hand now after they had been taken. They were recovered that next day."

The evidence shows that the prosecutor did prove that Mr. Wright's rings were recovered after Appellant was arrested. Mr. and Mrs. Wright both testified that after Appellant's arrest they got Mr. Wright's two rings back. Another witness, Officer Rainer testified that he recovered "jewelry and rings" from Appellant when he was arrested. Defense counsel established on cross-examination that Officer Rainer did not personally know that these were Mr. Wright's rings but failed to pursue this line of questioning further in order to establish where they were found or who identified them.

Appellant further contends that the prosecutors made misleading statements during final jury argument:

> STATE: Officer Rainer testified that he arrested Reginald Mullen. Do you remember that Mr. Wright said he lost his rings? He was on the stand: "yes, I recovered my rings after Mullen was arrested.

> DEFENSE: That's not what the evidence showed. He is mistaken in the evidence.

> COURT: Objection overruled.

These statements by the prosecutor were his *correct* recollections of the evidence adduced at trial. Therefore, the court correctly overruled Appellant's objection. *Johnson v. State*, 698 S.W.2d 154 (Tex. Crim.App.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Bailey v. State*, 650 S.W.2d 507 (Tex.App.— Houston [14th Dist.] 1983, no pet.). Appellant also complains that the prosecutor further stated, "Officer Rainer testified that the rings were found on the defendant" and, that later another prosecutor argued, "As Officer Rainer said the defendant when he was arrested, he had the rings on. He had the rings on, and Mr. Wright said that . . . after the arrest of the defendants, his rings were returned to him."

■ As we have already noted, Officer Rainer did not testify that the rings found on Appellant belonged to Mr. Wright. A timely objection and instruction to disregard this argument could have cured any harmful effect it may have had on the jury. However, Appellant failed to object to these statements. Where the defendant fails to object, and the argument was not such that an instruction by the court could not have removed any harm, no error is preserved for review. *Johnson v. State*, 698 S.W.2d at 167; *Short v. State*, 681 S.W.2d 652, 656 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). Appellant's fourth point of error is overruled.

■ In point of error five, Appellant contends that the State committed reversible error by introducing evidence gained by improper custodial interrogation in such a manner that precluded objection by Appellant. During the punishment phase of the trial Appellant was cross-examined by the State:

> Q: Do you feel bad about robbing those people at the Pizza Hut?

> A: I didn't rob them, sir.

> Q: Didn't you tell the Bailiff over here when you were walking out after the jury argument that you were guilty?

> A: No sir, I don't remember saying that.

Appellant made no objection to the prosecutor's question or Appellant's answer and does not explain how he was precluded from doing so. After Appellant rested his case, the State called the bailiff who testified as follows:

> Q: As the jury had gone out to deliberate and you were talking with the defendant, what was said? Can you tell us what was said?

> A: Mr. Mullen ask while I took him back to the lock-up, he said, "Do you believe I am innocent?" I said, "Well you are aren't you?" He said, "No, I am guilty, but there ain't nothing to it."

> Q: Is it possible that the comments you made to Mr. Mullen and his response to you back was him assessing his chances with the jury?

> A: I imagine it's possible.

Appellant did not object to this testimony and did not cross-examine the witness. Ap-

pellant's conversation and admission of guilt to the bailiff was voluntary and was not the product of custodial interrogation. We find it to be admissible. *See Sanchez v. State*, 589 S.W.2d 422 (Tex.Crim.App. 1979). Further, Appellant failed to object to the testimony and has not shown that he did not have an opportunity to do so. Error, if any, is waived. *Crocker v. State*, 573 S.W.2d 190, 205 (Tex.Crim.App.1978); *Booth v. State*, 499 S.W.2d 129, 135 (Tex. Crim.App.1973); *Farrar v. State*, 701 S.W.2d 32, 37 (Tex.App.—Houston [14th Dist.], 1985, pet. ref'd). Point of error five is overruled.

In point of error six Appellant contends that the trial court erred by asking the bailiff to repeat his testimony. After the bailiff quoted Appellant's statement, the following colloquy occurred:

COURT: What was it he told you?

BAILIFF: That he was guilty and there ain't nothing to it.

STATE: I will pass the witness.

COURT: Anything further? Mr. Heggen?

DEFENSE: No, Your Honor.

Appellant contends the trial court's request that this witness repeat his previous answer amounted to a comment upon the evidence which bolstered the credibility of the witness. We do not find that the form of the judge's request carried any implied acceptance of the truth of the bailiff's statement. *Daussin v. State*, 640 S.W.2d 631, 635 (Tex.App.—Houston [14th Dist.] 1982, no pet.). Appellant did not object when the court asked the witness to repeat the answer. Further, Appellant has made no showing of any prejudicial effect on the jury. Nothing is presented for review. *Woods v. State*, 653 S.W.2d 1, 6 (Tex.Crim. App.1983); *Downey v. State*, 505 S.W.2d 907, 909 (Tex.Crim.App.1974). Point of error six is overruled.

In his final point of error, Appellant argues that the trial court denied him a fair trial and effective assistance of counsel by allowing his attorney only thirty minutes in which to present his closing argument. We disagree. The docket sheets reflect that the State opened final argument and argued for five minutes, Appellant argued for thirty minutes, and the State closed after another ten minutes. When the court advised defense counsel that his time was up counsel requested an additional five minutes which the court denied. Counsel for Appellant thanked the court and jury and sat down. He did not request extra time prior to final argument nor object to the court's denial of an extension of time. We find no error.

The trial court is vested with broad discretion in limiting the duration of final arguments. The standard for reviewing the trial court's determination is abuse of discretion. *Hernandez v. State*, 506 S.W.2d 884 (Tex.Crim.App.1974). Here Appellant's counsel argued for twice as long as the State. We hold that the trial court did not abuse its discretion and overrule point of error seven.

Accordingly, the judgment of the trial court is affirmed.