Anthony Craig CHAISSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–88–056 CR.

Court of Appeals of Texas,
Beaumont.

Nov. 2, 1988.

John Manuel, Orange, for appellant.

Kerry M. Klintworth, 1st Asst. Dist. Atty., Orange, for appellee.

## OPINION

BURGESS, Justice.

Appellant was convicted by a jury of the offense of aggravated robbery. The jury assessed punishment at forty years' confinement in the Texas Department of Corrections. Appellant has perfected appeal to this court urging five points of error.

Shortly before midnight on October 30, 1987, Joann Bean, assistant manager of a Diamond Shamrock service station was preparing to close the station. Ms. Bean noticed a maroon, two-tone Pontiac pass through the station several times. Becoming somewhat concerned for her safety, she wrote down the license number. This same car then parked at the gas pumps. The black male driver of the vehicle entered the service station and paid for one dollar's worth of gasoline. She believed that the other occupant of the vehicle, who remained inside the car, was also a black man. The vehicle then left the station. A few minutes later, a black male wearing a beige shirt wrapped around his face entered the station with a knife in his hand. He grabbed Ms. Bean around the neck and held the knife to her throat. The assailant instructed her to open the cash register, and he took all the money from the register. At this time, a van occupied by Robert Henry and his wife, Cathy, pulled in and parked within six feet of the door to the service station. Mrs. Henry was sitting on the passenger side of the van, the side nearest to the door into the station. Mrs. Henry saw that the station was being robbed even before the van came to a complete stop. The robber fled from the station, which was well lighted, through the door, within three feet of where Mrs. Henry was seated. As he exited the station, he removed the shirt from his face, and Mrs. Henry got a good look at him. Mr. Henry initially tried to chase the robber down on foot, but he quickly gave up and returned to the station to pursue the robber in his van. Upon entering the roadway Mr. Henry saw a black man running down the road. The man had his shirt in his hand and was wearing dark pants and tennis shoes. Mr. Henry saw no one else in the vicinity. The black man ran into a parking lot and was out of Mr. Henry's sight for no more than five seconds. As Mr. Henry entered the parking lot he saw a red Pontiac leaving the parking lot. There were two people in the car. There were no other cars on the lot, and Mr. Henry stated there was no other place the robber could have gone except into the red Pontiac. Mr. Henry followed the Pontiac and eventually wrote down its license plate number which matched the license number of the Pontiac Ms. Bean had seen pass through the station earlier.

Ms. Bean phoned the Orange Police Department and reported the robbery and gave a description of the Pontiac which she

had seen earlier. Mr. Henry also gave the police a description of the car after returning to the station. This description included the license plate number both witnesses had noted and the fact that the car was occupied by two black males. Captain R.D. Waddell of the Orange Police Department was on patrol in the vicinity of the Diamond Shamrock station when he heard the police dispatch report of the robbery and the description of the car thought to be involved. Within a few minutes, Waddell spotted a Pontiac with the license plate number given in the dispatch call. Waddell called for assistance and continued to follow the suspect vehicle.

Subsequently Waddell stopped the maroon Pontiac in which appellant was a passenger and another black male was the driver. The driver of the Pontiac seemed to have some kind of leg injury and used crutches when he exited the vehicle. Appellant, the passenger, met the description of the robber given by the witnesses. Officer Hinton of the Pinehurst Police Department searched the passenger side of the vehicle and found a knife under a piece of carpet under the seat. Joann Bean testified that this knife's blade was approximately the same length as the one used by the robber. She also stated that the handle of the knife found by Officer Hinton had the same "darkish" handle as the knife wielded by the robber.

Both appellant and the driver of the car were arrested. Detective Materne searched the trunk of the vehicle and found a white plastic bag containing a beer can and $48.01 in bills and change. An audit of the cash register at the Diamond Shamrock station indicated that some $47.30 was missing from the register after the robbery. Joann Bean's testimony indicated that such audits were usually fairly accurate. The knife and money were introduced in evidence before the jury.

Before going to the scene of appellant's arrest, Detective Materne had asked Mr. and Mrs. Henry and Joann Bean to go to the Orange Police station to make formal statements. Officer Breshears transported appellant to the police station. When Mr. and Mrs. Henry arrived at the police station, they entered a long hallway. Mrs. Henry saw a black man sitting on a bench in the hallway. Officer Breshears was standing nearby. Mr. Henry stated that this man was handcuffed. Mrs. Henry could not remember whether the man was wearing handcuffs. Mrs. Henry recognized the man on the bench as being the same man whom she had seen fleeing from the service station a short time earlier and told her husband so. The man on the bench was wearing the same color shirt as that worn by the robber. When the Henrys told the police that they were witnesses from the Shamrock robbery, Officer Breshears immediately escorted them to another part of the building. Mrs. Henry testified that only about fifteen minutes passed from the time she and her husband arrived at the Shamrock station until they arrived at the police station.

Officer Breshears testified that he brought appellant to the police station. At one point he had appellant sit on the bench in the main hallway. He also testified that a man and a woman entered the hallway while appellant was sitting on the bench and identified themselves as potential witnesses to the robbery. He directed the witnesses to another room immediately upon learning that they were witnesses to the robbery. Upon cross-examination, Breshears testified that the encounter between Mrs. Henry and appellant at the police station was just an accident. He never asked Mr. or Mrs. Henry if appellant was the robber or otherwise directed their attention to him.

When Detective Materne returned to the police station, Mr. and Mrs. Henry were already in another part of the office and appellant was no longer in the hallway. Mrs. Henry then told Materne that she had seen the robber in the hallway. Materne then took Polaroid photographs of appellant and the driver of the car in which appellant had been found. Joann Bean was also present in the room with the Henrys when Materne showed them the photographs of the two suspects. Before showing the photographs to the witnesses, Materne had told the witnesses that the police

had the two men who committed the robbery and that they had found the missing money and the maroon Pontiac.

Materne then showed Mrs. Henry the photographs he had just taken and asked her, in effect, which of the two men was the one she had seen in the hallway. Mrs. Henry identified the photograph of appellant as representing the man she had seen in the hall. At approximately the same time and in Mrs. Henry's presence, Joann Bean identified the other photograph as the driver of the maroon Pontiac who had previously entered the Shamrock station and paid for gas. Ms. Bean testified that her identification of the driver of the car was based on what the officer had told her, not on what occurred earlier at the service station.

■ By his first point of error, appellant urges that the trial court erred in admitting evidence concerning Mrs. Henry's pre-trial identification of appellant because it was the product of an illegal detention and arrest of appellant. Appellant's pre-trial motion to suppress the identification evidence did not raise this issue as a ground for suppression of such evidence. Neither did appellant make any trial objection to the introduction of such evidence based upon this ground. Since appellant's point of error number one does not comport with any objection raised by appellant at or before his trial, this point of error presents nothing for review by this court. *Paster v. State*, 701 S.W.2d 843, 846 (Tex.Crim.App. 1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1240, 89 L.Ed.2d 348 (1986). Therefore, appellant's first point of error is overruled.

By his second and third points of error, appellant urges that the trial court erred in admitting evidence of Mrs. Henry's pre-trial and in-court identifications of appellant as the robber. Appellant raised these issues in his pre-trial motion to suppress identification evidence. After a full pre-trial hearing, the trial court overruled the motion to suppress. At trial, the state's first witness was Joann Bean. During direct examination, Ms. Bean testified that at the police station, she had identified a picture (state's exhibit number two) as the man who had come in earlier on the evening in question to pay for the gas for the maroon Pontiac. She also testified that she could not positively identify the man who had later robbed her, but that the robber was not the same man who had paid her for the gasoline for the maroon Pontiac. When the photograph Ms. Bean had identified at the police station was offered in evidence, appellant's counsel affirmatively stated that he had no objection to its introduction.

Upon cross-examination, defense counsel elicited the following testimony from Ms. Bean. When she picked out state's exhibit number two at the police station as representing the man who paid for the gas, "this other lady" was also present. This "other lady" picked out and identified another photograph. The police only showed them two photographs. Before showing them the photographs, police had told her that they had caught two suspects, that they had the car and had recovered the money. Ms. Bean testified that when he showed them the two photographs the policeman was suggesting that the pictures represented the two men who committed the robbery. Ms. Bean admitted that her identification of the picture of the man who paid for the gas was based upon what the officer had told her and not upon what she had seen earlier at the service station.

■ Evidence of a pre-trial identification [1] is not admissible where the identification procedures used by police were so unnecessarily suggestive as to present a very substantial likelihood of misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Jackson v. State*, 657 S.W.2d 123 (Tex.Crim. App.1983). However, in determining whether there was a substantial likelihood of misidentification, this court must consider whether, under the totality of the circumstances, the out-of-court identification

---

**1.** The same standard of admissibility applies to both evidence of pre-trial identifications and in-court identifications allegedly tainted by an unconstitutional pre-trial line-up. *Jackson v. State*, 657 S.W.2d 123, 127 (Tex.Crim.App.1983).

was shown to be reliable. *Id.* If the pretrial identification is shown to have sufficient indicia of reliability, the evidence is admissible, regardless of whether the police procedures leading to such identification were unnecessary and suggestive. *Id.*

▄ As to the photographic "lineup" used by the police in the instant case, the police procedures were obviously unnecessarily suggestive. Not only were all the eyewitnesses present together at the time Mrs. Henry chose appellant's photograph as representing the man she had seen at the police station, Ms. Bean may have made her verbal identification of the other man as the driver of the maroon Pontiac before Mrs. Henry decided which of the photographs to choose. *See Powell v. State,* 466 S.W.2d 776 (Tex.Crim.App.1971). Furthermore, the police had told the witnesses so much about the progress of the investigation that when confronted with the choice of only the photographs of the two suspects, all that remained for the witnesses to determine was which of the two men drove the car and which one entered the service station wielding the knife. *See Coleman v. State,* 505 S.W.2d 878 (Tex. Crim.App.1974).

▄ Regarding the encounter between Mrs. Henry and appellant in the hallway at the police station, however, we take a very different view. At trial and at the pre-trial hearing it was undisputed that the police officers did not arrange to have Mrs. Henry see appellant at the police station. The bench upon which appellant was seated when Mrs. Henry entered the police station was the only place to sit in that hallway. Prisoners had to pass down the hallway to be taken to the room in which fingerprinting and other identification investigation was performed. There is nothing in the record to indicate that Officer Breshears knew any of the witnesses were coming to the station at all that night, much less that they would arrive within fifteen to twenty minutes after the robbery took place. The purpose of the rule excluding evidence of unnecessarily suggestive and unreliable identification procedures is to deter police from using a less reliable procedure where a more reliable procedure is available. *See Jackson,* 657 S.W.2d at 128. Suppression of identification evidence obtained by accidental encounters between a suspect and an eyewitness, at a police station or elsewhere, would have little deterrent impact upon police procedures. Suppression of such evidence might, however, result in many guilty persons being able to avoid conviction. Appellant has cited no authority that such accidental encounters can be the basis of reversible error and we have found no such authority. Therefore, we hold that admission of the evidence concerning Mrs. Henry's identification of appellant as the robber as she entered the police station did not violate appellant's right to due process of law.

▄ Appellant's complaint based upon the suggestive photographic lineup procedures by which Mrs. Henry identified appellant's photograph as representing the man she had previously seen at the police station is not well founded. Through his cross-examination of Ms. Bean, appellant introduced the first information concerning Mrs. Henry's identification of the second man shown in the photographs, even though he referred to Mrs. Henry as "this other lady." This cross-examination effectively informed the jury that "this other lady" picked out the photograph of the other man (the one Ms. Bean stated she could not identify) as the robber she had seen fleeing from the service station a short time earlier. It is apparent that from such information any reasonably intelligent juror was effectively informed that Mrs. Henry chose appellant's photograph as representing the robber. Reference to or use by a defendant of the evidence complained of on appeal ordinarily cures or waives any error in admitting such evidence. *United States v. Davis,* 487 F.2d 112, 121 (5th Cir.1973), *cert. denied,* 415 U.S. 981, 94 S.Ct. 1573, 39 L.Ed.2d 878 (1974).

▄ Furthermore, under the factors set out in *Manson v. Brathwaite* and *Jackson v. State,* we conclude that, under all the circumstances, Mrs. Henry's face-to-face identification of appellant as she entered the police station was shown to be reliable.

Mrs. Henry's opportunity to view appellant was of short duration, but was at very close range and under good lighting conditions. Her degree of attention was shown to be very high; indeed, she noticed that a robbery was being committed before her husband stopped the van in front of the service station door and did not take her eyes off appellant from that time until he fled past the van. There is little evidence of any particularly detailed initial description Mrs. Henry may or may not have given to the police. However, this factor seems to be of somewhat lesser importance where, as in this case, there appears to have been little opportunity for Mrs. Henry to speak to Detective Materne before he was called away to the scene of appellant's arrest. Mrs. Henry was very certain, when she saw appellant at the police station, that he was the robber. She stated that she could have identified him at that time even if there were forty men in the hallway. We also think it very important that this in-person identification took place approximately fifteen minutes after Mrs. Henry saw the robber at the service station. For all these reasons, we hold that the pre-trial identification evidence was properly admitted because there were sufficient indicia of the reliability of such identification that there was not a substantial likelihood of misidentification. Appellant's points of error numbers two and three are overruled.

■ By his fourth point of error, appellant complains the items seized from the car in which appellant was a passenger were the fruits of an illegal arrest, search and seizure. Insofar as this point of error complains that appellant's arrest was illegal, nothing is presented for review because appellant made no objection at or before trial to the introduction of the knife or money on such ground. *Paster,* 701 S.W.2d at 846. There being no evidence that appellant had any expectation of privacy in the car or its contents, he may not contest the legality of the search and seizure of the car or its contents. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Therefore, appellant's fourth point of error is overruled.

■ Appellant's fifth point of error complains that his trial counsel rendered such ineffective assistance that appellant was denied due process of law. Under this point of error, appellant's brief states only the following:

Appellant instructed his appointed attorney to include this Ground of Error. Appellant would cite the entire record before the Court in support of his Ground of Error.

Where an appellant's brief contains no argument or authority in support of a point of error, nothing is presented for review by the appellate court. *TEX.R.APP.P. 74(f); Byrom v. State,* 528 S.W.2d 224 (Tex.Crim. App.1975); *Hefner v. State,* 735 S.W.2d 608, 626–27 (Tex.App.—Dallas 1987, pet. ref'd); *Martinez v. State,* 644 S.W.2d 104, 112 (Tex.App.—San Antonio 1982, no pet.). Appellant's fifth point of error is certainly not supported by any authority. Furthermore, the mere fact that appellant wanted his attorney to include such a point of error is no argument in support of the merits of the point. Appellant's fifth point of error is overruled and the judgment of the trial court is affirmed.

AFFIRMED.