**Henry Vernon THOMAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–88–00904–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 5, 1990.

1.  736 S.W.2d 724 (Tex.App.—Waco 1987), *rev'd on other grounds in part, aff'd in part,* 751 S.W.2d 485 (Tex.1988).

Dennis Buckley, Houston, for appellant.

Linda A. West, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## MAJORITY OPINION

JUNELL, Justice.

A jury convicted appellant of aggravated robbery and the court assessed punishment at confinement in the Texas Department of Corrections for seventy-five years and a fine of $10,000. Appellant brings five points of error alleging: (1) and (2) unduly suggestive photo and lineup identification procedures; (3) improperly failing to instruct the jury on eyewitness identification; (4) improperly sustaining the State's objection to jury argument concerning appellant's in-court identification; (5) and the overruling of appellant's motion to quash the indictment for failure to prepare a grand jury memorandum. We affirm.

Complainant was visiting with her neighbor in the front yard on a June evening near sundown when she was approached by appellant who asked complainant if her adult son was at home. Complainant recognized appellant from his previous contacts with her son who was not then at home. Appellant asked if he and his female companion could wait inside for the son to return. Complainant agreed and the three sat in the well-lighted kitchen for about an hour and talked while drinking beer. Appellant asked permission to use the bathroom facilities. Upon his return to the kitchen appellant advised complainant that her toilet was overflowing. She went to check. She observed a full roll of paper had been stuffed into the toilet bowl. When complainant turned, she saw appellant with a handgun pointed at her. Appellant told complainant to cooperate. Appellant's female companion used grey duct tape to restrain complainant, placing the tape over complainant's hands, legs and face. Complainant could see through a slit in the tape that appellant was taking her TV, clothing, money, jewelry, foodstuff, and other property. Later complainant was placed on the bathroom floor and ap-

pellant poured approximately ten bottles of alcohol near and around her. Appellant disconnected the air conditioner and placed a lighted candle near a pile of clothing, turned on the gas jets in the kitchen and drove away in complainant's car. At approximately 3 a.m. complainant freed herself and called help. Police arrived and investigated. The first officer on the scene testified there was a strong odor of cooking gas and alcohol in the house. He found no usable fingerprints or other evidence. He said complainant gave him a description of her assailants but could not name them.

After two weeks elapsed, complainant was visited in her home by a Houston police sergeant who displayed five photos from which she was asked to try to identify the male assailant. The officer testified that complainant became "frightened or nervous" when she was handed the photo spread. She initially chose photo #5 as being "similar". The sergeant told her the #5 person was not a suspect. She immediately then chose #3 which was the photo of appellant.

More than two years after the offense, complainant and her son went to Los Angeles to take part in a police "lineup" procedure wherein appellant was identified by both complainant and her son. A Los Angeles police sergeant described at trial the actual procedures used for this lineup.

In the first and second points of error appellant complains of the overruling of his pretrial motion to suppress the photo spread identification by the complainant and to suppress the Los Angeles lineup identification. Appellant contends that the methods used by the police while showing photographs to complainant in her home were impermissibly suggestive and a violation of due process. Appellant points to the undisputed fact that the police officer informed complainant that her initial choice was not a suspect in the case. The record shows the officer did not tell complainant she *had* to pick one of the five people displayed in the photos, nor did the photos have any indicia to suggest the persons were in police custody at the time the pho-

tos were taken. The photo array depicted five Black males of about the same age and with similar facial hair. Appellant contends that the lineup procedure in Los Angeles was tainted by the earlier challenged photo identification process, citing *Gonzalez v. State,* 752 S.W.2d 695 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd) (where the defendant was shown in "jail garb" with letters and numbers on a sign, and police told complainant she *had* to identify one of the five persons shown); and *Lang v. State,* 747 S.W.2d 428 (Tex.App.—Corpus Christi 1988, no pet.)(where showing the photo of a *single* "suspect" was deemed suggestive).

Appellant further contends that, because both the mother and son were in the same room during the Los Angeles lineup, an unfair opportunity was created for them to influence each other, citing *Chaisson v. State,* 761 S.W.2d 77 (Tex.App.—Beaumont 1988, no pet.)(containing an extensive review of proper criteria for reliable pre-trial identification[1], and where police explained to witnesses their investigation findings while showing the photos of the only two persons suspected of the offense).

■ We find nothing impermissibly "suggestive" about the photo array or the procedure used by police in obtaining the identification of appellant by complainant. (The most harm that could have resulted was a reduction in the number of photos viewed by complainant from five down to four.) Having found the photo spread was not improper, there is no reason to consider the Los Angeles lineup identification was tainted by the earlier photo identification. However, the lineup itself was not inherently improper. Testimony of the Los Angeles police officer as to the process used shows no unfairness, and complainant testified that her son was in the back of the viewing room and not in communication with her when she made her positive identification of appellant. Further, we find the in-court identification by complainant was valid and admissible.

A defendant who contends on appeal that a trial court erred in allowing an in court identification of him by a complaining witness has a difficult and heavy burden to sustain, for unless it is shown by clear and convincing evidence that a complaining witness' in court identification of a defendant as the assailant was tainted by improper pre-trial identification procedures and confrontations, the in court identification is always admissible. *Jackson v. State,* 628 S.W.2d 446, 448, (Tex. Crim. App. [Panel Op.] 1982); *Mullen v. State,* 722 S.W.2d 808, 814 (Tex.App.—Houston [14th Dist.] 1987, no pet.).

Appellant's points of error one and two are overruled.

■ Appellant's third point of error complains of the overruling of his objection to the court's failure to instruct the jury on how to evaluate eyewitness testimony on the identification of the complainant's assailants. Appellant requested the following instruction pertaining to in-court identification:

A defendant in a criminal case is entitled to pretrial identification procedures that are fair and unsuggestive and that any court identification is not admissible evidence if it results from an unfair or suggestive pretrial identification procedure. You are instructed that if you find from the evidence or have a reasonable doubt that Creasie Butler's in-court identification resulted from any unfair or suggestive identification procedure, photo spread, or line-up, you are to disregard Creasie Butler's in-court identification of Henry Thomas.

No standard for judging "unfair or suggestive" was included in appellant's requested instruction which was denied. The requirement for this type of instruction has been reviewed and rejected by the court of criminal appeals on several occasions. *Andujo v. State,* 755 S.W.2d 138 (Tex.Crim. App.1988); *Allen v. State,* 511 S.W.2d 53 (Tex.Crim.App.1974). We see no circumstances in the case before us which would

---

1. *Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *Jackson v. State,* 657 S.W.2d 123 (Tex.Crim.App.1983) provided the criteria. These two cases are cited also by appellant in his brief.

compel a different holding than that of *Andujo* or *Allen*. Appellant's third point of error is overruled.

The fourth point of error calls our attention to appellant's comment during jury argument that complainant could not identify appellant in court and the court's sustaining of the State's objection to that statement. This issue focuses on an alleged improper jury argument.

Complainant testified at a pre-trial hearing on motions to suppress a photograph and lineup identifications. She was on the stand for about one hour in the morning. Her testimony occupies thirty-five pages in the statement of facts. After preliminary background questions were asked of complainant, the prosecution began questioning about the incident leading to the offense. On the second page of the thirty-five pages, this was the third substantive question:

> STATE: Now, let me stop you for a minute. When you said that Henry came and asked you whether or not Sherman was home, do you see that person in the courtroom that you call Henry?

2. STATE: Now, there's one question that I asked you when you were in the witness stand before that I would like to clear up. I had asked you whether or not you saw the person in the courtroom that had robbed you back in June of '84 and at that time, you basically didn't answer or looked around the court—
DEFENSE: Judge, I'm going to object to the question. It's been asked and answered. I believe her testimony in response to the question was, "No, I don't see him in court today." THE COURT: What was the last three words you said?
DEFENSE: "No, I do not see him in court today." I believe her testimony was—the question was, "Do you see him in the courtroom today?" Her response was, "No, I don't know if he's in the courtroom today."
STATE: Well, Your Honor, I would like to ask her follow-up question at this time, if I may.
THE COURT: Okay. Go ahead.
STATE: And, Mrs. Butler, did we discuss that portion of your testimony briefly in the hall before we returned from the lunch break?
COMPLAINANT: You said did we—
STATE: Yes. Did you and I talk about that out in the hallway a few minutes ago?
COMPLAINANT: About the testimony?
STATE: About that question that I asked you?
COMPLAINANT: Yes, ma'am.

Do you know whether he is in the courtroom today?
COMPLAINANT: No.

During lunch break at the pre-trial hearing, complainant approached the prosecutor and pointed out that late in her one hour on the stand in the morning she did in fact see appellant in the courtroom, but she had been given no opportunity to revise her testimony which was to the contrary. The State put her back on the stand[2] in the afternoon session of the pre-trial hearing for the sole purpose of getting complainant's courtroom identification and her explanation into the record. Later in the pre-trial hearing, the Court made a point of describing for the record the courtroom setting in which complainant was being asked if she saw appellant. He noted that a "blind spot" was created by the bench structure which partly obscured complainant's view of appellant as he sat at a table on the opposite side of the courtroom.

During jury trial, complainant was asked to verify her lack of identification and her correction, which was done as follows:

> STATE: And could you tell the Judge what it was that you told me about the answer to that question.
> COMPLAINANT: I told you—I said after I had said it, it was later on that I discovered he was in the courtroom.
> THE COURT: Excuse me. Repeat that, ma'am.
> COMPLAINANT: I told her after I had told her that, later on I discovered—I seen him in the courtroom.
> STATE: And then when you discovered that you did see him in the courtroom, I didn't ask you again about it, did I?
> COMPLAINANT: No, you did not.
> STATE: Then I would like to ask you now, ma'am, do you see the person in the courtroom that you identified in the lineup and also the person that robbed you back in June of 1984?
> DEFENSE: Judge, for purposes of the record—
> COMPLAINANT: Yes, ma'am.
> DEFENSE: I'm going to make the same objection and also in addition my objection would be bolstering.
> THE COURT: Overruled. Go ahead.
> STATE: Where is—ma'am, I'm going to ask you to point out where he's sitting and to describe something he's wearing ...

DEFENSE: Do you remember—you've identified Mr. Thomas today in the courtroom as the person who committed the robbery. Do you recall a couple of days ago during a hearing the prosecutor asking you a question: "Do you see the defendant in the courtroom today?" Do you recall responding, "No, I don't know if he's in the courtroom today or not"? Do you recall that?

COMPLAINANT: Yes, I recall that. When I first come in here, I didn't notice him; but after I sit here awhile and looked over there, I recognized him.

DEFENSE: Okay, We had a hearing that lasted most of the day on Tuesday, correct?

COMPLAINANT: What did you say?

DEFENSE: We had a hearing that lasted most of the day on Tuesday, do you remember, a couple of days ago?

COMPLAINANT: Uh-huh.

DEFENSE: You testified both in the morning and in the afternoon; is that right?

COMPLAINANT: Yes.

DEFENSE: In the morning you testified and the prosecutor asked you, "Do you see the defendant in the courtroom today?" You said, "No, I don't know if he's here or not." That was in the morning, correct?

COMPLAINANT: Right.

DEFENSE: After lunch—a couple of hours after you made that statement, the prosecutor again asked you the same question and what was your response at that time?

COMPLAINANT: I told her—I said, "I seen him sitting out there. I recognized who he was afterwards, but didn't nobody ask me again and I didn't just volunteer that I knew who he was."

\* \* \* \* \* \*

In final argument, the defense made these comments which were objected to: "... she had an hour to look at Henry Vernon Thomas at this distance and during that hour, she had ample opportunity to look at him and when the prosecutor said—asked her the question, "Do you see the person in the courtroom today who committed the offense on June 8 of 1984?" She said, "No, I don't see him here in the courtroom." Then they broke for lunch, the testimony was. And after lunch, they came back and that little comment, "No, I don't see the person in the courtroom Tuesday morning"— ...

The prosecutor's objection was on two grounds: (1) the evidence was not before the jury, and (2) that the remarks of the defense incorrectly make it appear that complainant was on the stand for a full hour before she was asked to identify appellant in the courtroom. Only the second of these objections has any merit because evidence of complainant's inability to identify appellant at the pre-trial hearing was in fact before the jury.

In reviewing this point we consider the general areas within which acceptable jury argument must fall:

(1) summation of the evidence;

(2) reasonable deduction from the evidence;

(3) answer to an argument of opposing counsel; and,

(4) a plea for law enforcement.

*Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim.App. [Panel Op.] 1980).

The statement by the defense no doubt does pertain to evidence heard by the jury, and would normally be allowable commentary. However, the statement is a material mischaracterization of the evidence which leads to an *unreasonable* deduction. While appellant asserts in his brief that he was doing no more than attacking the credibility of the complaining witness, final argument is not a proper place for the open attack other than by a fair and reasonable review of the evidence, as allowed under *Todd*. If the statement was properly allowable under the *Todd* standard of review, the sustaining of objection was error. However, if it was error, it was harmless beyond a reasonable doubt because the action of the court in sustaining the objection

tended to place the evidence back into its proper context. Point of error number four is overruled.

■ In his fifth and final point of error appellant argues that the indictment should have been quashed, upon proper motion made, on grounds that no advance memorandum was prepared by the grand jury and signed by the foreman, in accordance with TEX.CODE CRIM.PROC.ANN. art. 20.19. The record shows a written motion to quash was denied by the court. This court has previously reviewed this issue in *Black v. State*, 735 S.W.2d 897 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd), and *Paxton v. State*, 730 S.W.2d 829 (Tex.App.—Houston [14th Dist.] 1987), *rev'd on other grounds* 761 S.W.2d 15 [*Rose* remand]. The "shall" wording of article 20.19 has been held directory rather than mandatory, and appellant may not go behind an indictment that is valid on its face to allege procedural errors or the sufficiency of evidence presented to a grand jury. Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.

J. CURTISS BROWN, C.J., files a separate opinion concurring in the result.

J. CURTISS BROWN, Chief Justice, concurring.

I agree with much of the court's opinion. However, I think that appellant's counsel was entitled to attack the credibility of the "in court" identification by complainant. She denied the presence of appellant in the courtroom until a recess afforded the prosecutor a chance to "explain" the sworn answer previously made. I would hold that an advocate has a right to comment on these circumstances and it was error for the trial to sustain an objection to the argument. However, I agree with the court that in the context of this case the error was harmless.

I, therefore, concur in the results only.