**Charles William GREEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–409–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 18, 1992.

Edmund Cyganiewicz, Noe D. Garza, Brownsville, for appellant.

Luis V. Saenz, County (Crim. Dist.) Atty., John A. Olson, Asst. County Atty., Brownsville, for appellee.

Before GILBERTO HINOJOSA, KENNEDY and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Charles William Green appeals his conviction for burglary of a habitation, for which the jury assessed punishment at 60 years in prison. Green brings two points of error complaining of an improperly suggestive pre-trial identification and challenging the sufficiency of the evidence to exclude the possibility that his brother, Floyd Hendricks, committed the burglary. We affirm.

The victim, Arnoldo Guerrero, lives in a trailer home in Cameron County, Texas. Floyd Hendricks lived alone in a trailer on an adjoining lot, where Green periodically visited him. While Guerrero was out of town on the night of December 26, 1990, someone broke into and burglarized his trailer home. Two teenagers in a neighboring yard witnessed the burglar running from Guerrero's trailer to the adjacent trailer of Floyd Hendricks. The mother of one of the witnesses then notified the police, who investigated the scene of the burglary, briefly questioned Hendricks and Green, and recovered certain property from the back of Hendricks' car which was in

plain view and which neither of the two brothers claimed to own.

Fourteen-year-old Jose Rojas testified that on December 26, 1990, at 9:25 p.m., he was in his friend Elias Mendoza's front yard talking. Although it was dark except for a street light, Rojas saw somebody run out the door of Guerrero's trailer with something in his hands and enter Hendricks' trailer. Rojas testified that, although he saw the burglar for only a few seconds, he thinks it was Green. Rojas testified that Green and his brother look the same to him in the face and hair, but that Green is a little bit skinnier and shorter, which helped Rojas to distinguish Green from his brother. Later Rojas and Mendoza went to the police station where they both identified Green as the burglar from a photospread.

Fourteen-year-old Elias Mendoza testified that he also saw someone run out of Guerrero's trailer and into Hendrick's trailer. In addition, after the police left and Guerrero's door had been boarded up, Mendoza again saw Green at Guerrero's trailer pulling on the boards. Mendoza testified that Hendricks and Green look the same, but that Green is shorter and skinnier, and that Mendoza can tell them apart. Mendoza testified at trial that he had correctly identified Green as the man he saw that night running out of Guerrero's trailer. Mendoza then explained that, although he did not see what the man looked like, he saw that the body was too skinny to be Hendricks. On cross-examination, however, Mendoza indicated that he believed the burglar was Green only because the police did not take Hendricks away that night.

Elias Mendoza's mother, Emma Mendoza, testified that on December 26, 1990, at 9:30 p.m., Elias and Jose were outside playing. Emma also testified that she boarded up Guerrero's door after the burglary, but that, shortly after the police left the scene, Green came out of his brother's trailer and pulled on the board that Emma had used to secure Guerrero's trailer door. Emma again called the police. Green then went back to his brother's trailer, walked out again, and rode away on a bicycle that Emma had seen Guerrero riding before.

Brownsville police officer David Turrubiate testified that he investigated the burglary after Emma Mendoza reported it. After finding Guerrero's trailer door forced open, Officer Turrubiate searched the trailer and then observed a vehicle on Hendricks' lot with its dome light on as if the door was ajar. In the back of this vehicle, Turrubiate saw a VCR and a microwave oven in plain view. Turrubiate then went to Hendricks' trailer, knocked on the door, and asked Hendricks if the items in the vehicle belonged to him. Hendricks stated that they did not, but that Green had put them there. Green, who was then in Hendricks' trailer, denied that he owned the items in the vehicle or that he had put them there. Hendricks then opened the car door and allowed the police to take custody of these items. Later that night at around 11:00 p.m., the police arrested Green for public intoxication while he was riding a bicycle. The bicycle was seized and stored by the police for safekeeping. Brownsville Police Officers Harry Silva and Heriberto Garza confirmed that the bicycle was a white Murray Biotech Fitness Cycle. Garza further testified that Green had claimed the bicycle and it had been released to him the next morning.

The victim, Arnoldo Guerrero, testified that he noticed when he returned on December 27, 1990, that his front door had been broken by force, that his personal belongings were scattered all over the floor inside his trailer, and that he was missing a VCR, a white Murray Biotech fitness bicycle, a small AM–FM radio, an IBM electric typewriter and a microwave oven, the latter two Guerrero recovered from the police department.

By his first point of error, Green complains that the trial court erred in failing to suppress the testimony of Elias Mendoza and Jose Manuel Rojas identifying Green as the burglar, because the pre-trial identification procedure using a photospread was impermissibly suggestive.

■ The State responds that Green failed to preserve error because he did not

object to the suggestiveness of the photospread. However, from a review of the record, we find that Green did file a written pre-trial motion to suppress the identification testimony on the ground that the procedures used during the photographic identification were impermissibly suggestive, and he then argued at the suppression hearing that the identification procedure was flawed on the same grounds he now raises on appeal. The trial judge carried this motion with the case. Green then objected at trial to any identification testimony by the two witnesses in question on the grounds alleged in his motion to suppress. The trial court overruled both this objection and the motion to suppress, and proceeded with the testimony of the two identification witnesses. Green properly preserved error on the grounds he now raises concerning the suggestiveness of the identification procedures. *See Perry v. State*, 703 S.W.2d 668, 673 (Tex.Crim.App.1986).

■ When an in-court identification is challenged as having been tainted by an allegedly improper pre-trial photospread identification, we apply a two-part test. First, was the photographic identification impermissibly suggestive? Second, would the identification give rise to a very substantial likelihood of irreparable misidentification? *Aumada v. State*, 657 S.W.2d 890, 892 (Tex.App.—Corpus Christi 1983, pet. ref'd).

■ A pre-trial photographic identification is impermissibly suggestive when the identification procedures used by police were so unnecessarily suggestive as to present a very substantial likelihood of misidentification. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Jackson v. State*, 657 S.W.2d 123, 127–28 (Tex.Crim.App.1983). In the present case, Green complains that the pre-trial identification procedure was impermissibly suggestive because the photospread did not include a picture of his brother, Floyd Hendricks, because the police told the witnesses that the burglar was

not Hendricks just before they identified Green, and because the two witnesses were not separated during the photo identification.

■ Green first contends that, because his brother looks very much like him and had an equal opportunity to have committed the burglary, under these circumstances the police should have included a picture of his brother in the photospread so that the witnesses would have an opportunity to distinguish which of the two men they saw commit the burglary. With regard to such identifications in general, although the better practice may be to get as many individuals as possible who fit the defendant's description, it is not essential that all the individuals be identical. *Buxton v. State*, 699 S.W.2d 212, 216 (Tex. Crim.App.1985); *Turner v. State*, 600 S.W.2d 927, 933 (Tex.Crim.App.1980). Neither do we find any requirement for the use of any specific other individual in the lineup or photospread.[1] Rather, we believe that whether Green's brother's picture was included does not affect the suggestiveness of the identification procedure, but that the similarity between the appearance of Green and his brother merely goes to the weight to be given to the identification under the unique circumstances of the present case.

Green next complains that the police told the witnesses that the burglar was not Hendricks just before they identified Green, and that the two witnesses were not separated during the photo identification. We find that the evidence is conflicting on these claims. Mendoza and Rojas testified that the police informed them that Green's brother was not the burglar immediately before their positive identifications of Green. In addition, both witnesses testified that they looked at the photospread together and identified Green at the same time.

However, Brownsville police detective Abraham Delgado, who conducted the identification procedure, testified that he did not tell the witnesses who was suspected of

---

1. Moreover, it would seem that the use of nearly identical individuals (e.g., twins) in a lineup or photospread might itself draw attention and be impermissibly suggestive that one of these two individuals, and none of the others in the group, committed the crime.

the burglary or that Green's brother did not do it. Delgado further testified that he put together a six-picture photo lineup based on the witnesses' description of a blue-eyed, bearded, long-haired, light-complected burglar. He stated that, although the witnesses were in the same room, they were not together when they viewed the photo lineup. While Delgado showed one of the witnesses the pictures at a desk, the other witness was at a separate table such that neither witness saw the other point out Green from the lineup. In addition, the victim, Arnoldo Guerrero, accompanied the witnesses to the police department and observed the photospread identification procedure. Guerrero testified that the witnesses were not told that Green's brother was not the one who committed the burglary, and that, although both witnesses were in the same room, they were not side-by-side but eight to ten feet apart and they were shown the pictures separately.

On a motion to suppress, the trial judge is the sole judge of the credibility of the witnesses and the facts. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App. 1980); *Draper v. State*, 539 S.W.2d 61, 62 (Tex.Crim.App.1976). The recommended procedure for photographic identification by more than one witness is for the exhibition of photographs to be shown to the witnesses separately and apart. *Powell v. State*, 466 S.W.2d 776, 778 n. 1 (Tex.Crim. App.1971); *Chaisson v. State*, 761 S.W.2d 77, 81 (Tex.App.—Beaumont 1988, no pet.). However, even though two witnesses may be in the same room at the time of a photospread identification, if the witnesses are sufficiently separated so that they are not in communication during the exhibitions and identifications, the procedure is not improper or impermissibly suggestive. *See Thomas v. State*, 788 S.W.2d 887, 889 (Tex.App.—Houston [14th Dist.] 1990, no pet.). In the present case, it was within the trial court's discretion to believe the testimony of Delgado and Guerrero showing that proper procedures had been used during the photospread identification. Appellant's first point of error is overruled.

By his second point of error, Green challenges the sufficiency of the evidence to exclude every other reasonable hypothesis except that Green was the one who entered Guerrero's habitation. Green points specifically to the possibility that his brother was the one who burglarized Guerrero's trailer. Green complains that the witnesses were themselves uncertain which of the two men they saw running from the trailer.

In reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Baugh v. State*, 776 S.W.2d 583, 585 (Tex.Crim.App.1989); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App. 1989).

In the present case, the two witnesses testified that, although Green and his brother look the same, the witnesses could tell them apart from their build, and that they saw Green, not Hendricks, running from Guerrero's trailer. In addition, Officer Turrubiate testified, without objection, that Hendricks had identified Green as the one who had placed the stolen items in his car.[2] Finally, Green was again identified returning to the scene of the crime pulling on the boards that secured Guerrero's door, and later was arrested while riding a bicycle that fit the description of one stolen from Guerrero. The jury was entitled to believe the witnesses' identification of Green, as well as the surrounding circumstances indicating that Green and not Hendricks committed the burglary. We hold that there was sufficient evidence to support the conviction. Appellant's second point of error is overruled.

The judgment of the trial court is AFFIRMED.

---

**2.** Inadmissible hearsay of this sort, if admitted without objection, may be considered by the trier of fact as probative evidence. *Fernandez v.* *State*, 805 S.W.2d 451, 455–56 (Tex.Crim.App. 1991); *Chambers v. State*, 711 S.W.2d 240 (Tex. Crim.App.1986).