**James Emery PASTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69220.**

Court of Criminal Appeals of Texas, En Banc.

July 24, 1985.

Rehearing Denied Oct. 23, 1985.
Certiorari Denied Feb. 24, 1986.
See 106 S.Ct. 1240.

Stanley G. Schneider, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and J. Harvey Hudson, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(3). After finding appellant guilty, the jury returned affirmative findings to the special issues under Art. 37.071(b), V.A. C.C.P. Punishment was assessed at death.

Appellant was convicted under an indictment which charged in pertinent part that appellant "on or about October 25, 1980, did then and there unlawfully, intentionally and knowingly cause the death of Robert Edward Howard, hereinafter styled the Complainant, by shooting the Complainant with a gun, and the Defendant committed the murder for remuneration and the promise of remuneration, namely, money."

At the outset appellant contends his statement was "obtained in violation of appellant's Sixth Amendment right to counsel."

Houston homicide detectives Williamson and Smith took the oral recorded statement from appellant while the accused was confined in a state prison in Alabama.

At the hearing on the admissibility of the confession appellant testified that upon the Houston officers entering the room, and at

a time prior to the tape recorder being turned on, he told them he had been expecting them and "I immediately asked for an attorney." See *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ Appellant requested and was given a *Jackson v. Denno* hearing. While a number of reasons were advanced why the confession was not admissible, we are unable to find where he ever urged in the trial court that he requested counsel. An error presented on appeal must comport with the objection raised at trial. The error urged on appeal was not properly preserved for review. *Gauldin v. State,* 683 S.W.2d 411 (Tex.Cr.App.1984).

■ Further, Detective Williamson testified that appellant "never asked for a lawyer." Detective Smith testified that he did not recall that the appellant ever asked for a lawyer. Appellant contends in his brief that "only one of the [two] officers contradicted appellant" at the hearing. At the hearing on the voluntariness of the confession, the court is the judge of the credibility of the witnesses. The court's finding contrary to appellant's contention is supported by the evidence. *Hawkins v. State,* 613 S.W.2d 720 (Tex.Cr.App.1981); *Rumbaugh v. State,* 629 S.W.2d 747 (Tex. Cr.App.1982). No error is shown.

Appellant contends he was denied due process by the admission of "his audio statement in violation of Art. 38.22, Sec. 3(a)(1), V.A.C.C.P., in that all oral statements must be visually recorded and not simply audio."

The pertinent portions of Art. 38.22 provide:

"(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

"(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement,"

In urging that all oral statements must also be visually recorded appellant points to the fact that all examples given in Art. 38.22, Sec. 3(a)(1) are visual recordings.

■ Since the term "electronic recording" is not defined in the statute such term is to be taken and understood in its "usual acceptation in common language." Art. 3.01, V.A.C.C.P. Webster's Third New International Dictionary defines "recording":

"1 a: the process of recording something esp. sound ... b: a period or session of recording something ... 2 a: what is recorded (as on a phonograph record, magnetic tape) ... b: a phonograph record, magnetic tape, or some other thing (as film, wire, one of the perforated rolls played by a player piano) on which sound or visual images have been recorded for subsequent reproduction ..."

The provision in Sec. 3(a)(4) that the statement will not be admissible unless "all voices in the recording are identified" tends to refute any interpretation that the recordings must be visually recorded. Logic dictates that an audio recording, rather than an audio-visual recording, would necessitate an identification of the voices reproduced theory.

We do not construe Sec. 3(a)(1) of Art. 38.22, supra, to exclude audio recordings, but rather to point out that the electronic recording "may include" certain named visual recordings. We reject appellant's contention that Art. 38.22, Sec. 3(a)(1), supra, requires that all oral statements be visually recorded.

Appellant contends "the 1981 amendment to V.A.C.C.P. Art. 38.22(3) is unconstitutional in that the caption to Senate Bill 121 which states 'an act relating to the admissibility in a criminal proceeding and preservation of a statement made by an accused as a result of or during a custodial interrogation' does not give readers fair notice of the subject matter contained in the bill." [1]

The full text of the caption reads:

---

**1.** Sec. 3 of Art. 38.22 as amended in 1981 in its   full text provides:

"An Act relating to the admissibility in a criminal proceeding and the preservation of a statement made by an accused as a result of or during a custodial interrogation; amending Section 3, Article 38.22, Code of Criminal Procedure, 1965, as amended."

Appellant bottoms his contention of failure to give readers fair notice of the subject matter or an omission of the caption to "indicate in any manner that the amendment applies to the introduction of oral and sign language statements in any phase of a criminal proceeding."

It appears to be appellant's position that our opinion in *Ex parte Crisp*, 661 S.W.2d 944 (Tex.Cr.App.1983) requires a holding that the instant caption fails to give "fair notice of its intent to a reasonable reader."

In *Crisp* this Court found that at best the bill referred to changes in the Controlled Substances Act while failing to mention changes in the Code of Criminal Procedure and Penal Code. The concurring opinion points out that the caption failed to give notice that the Controlled Substances Act was to be amended.

Art. III, Sec. 35, Constitution of the State of Texas, provides:

"No bill ... shall contain more than one subject, which shall be expressed in its title."

It is not urged or even suggested that the caption under attack herein modifies other statutes or subjects. Clearly, the infirmity in the caption in *Crisp* is not present.

■ A statute will not be held unconstitutional where its provisions relate, directly or indirectly, to the same general subject, have a mutual connection, and are not foreign to the subject expressed in the title. *Robinson v. Hill*, 507 S.W.2d 521 (Tex. 1974); *Babcock v. State*, 668 S.W.2d 857 (Tex.App.—Austin 1984).

■ The introduction of oral or sign language statements in accordance with the provisions of Art. 38.22, Sec. 3 may not reasonably be said to be foreign, unrelated, different, unconnected, separate, or inappropriate to the expression contained in the caption.

■ When a statute is attacked under Art. III, Sec. 35, supra, the court should construe the statute liberally so as to uphold it if possible. *Stein v. State*, 515 S.W.2d 104 (Tex.Cr.App.1974).

Granted that "a somewhat stricter rule of confirmity of title to subject matter legislated on within an act is applied to amendments," *Crisp v. State*, supra, we find no merit in appellant's contention that the caption fails to give fair notice of the subject matter contained in the bill.

"(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

"(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

"(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

"(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate, has not been altered, and reflects that the accused was advised before the interrogation that the interrogation will be recorded; and

"(4) all voices on the recording are identified.

"(b) Every electronic recording of any statement made by an accused during a custodial interrogation must be preserved until such time as the defendant's conviction for any offense relating thereto is final, all direct appeals therefrom are exhausted, or the prosecution of such offenses is barred by law.

"(c) Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

"(d) If the accused is a deaf person, the accused's statement under Section 2 or Section 3(a) of this article is not admissible against the accused unless the warning in Section 2 of this article is interpreted to the deaf person by an interpreter who is qualified and sworn as provided in Article 38.31 of this code."

Appellant contends that the trial court erred "in overruling appellant's motion for mistrial when before the jury, his co-defendant, Gary Lewis LeBlanc stated that he and appellant took three lives."

On direct examination by the State of Gary Lewis LeBlanc, the following occurred which gives rise to appellant's ground of error:

"Q. In return for your testimony here today, the State has entered into a plea bargain with you; have they not?

"A. Yes, sir.

"Q. Tell the jury what that plea bargain is.

"A. The plea bargain is thirty-five years.

"Q. Were you charged with capital murder?

"A. Yes, sir.

"Q. You were to be convicted of what offense?

"A. Murder.

"Q. Of who? Robert Edward Howard?

"A. No, sir.

"Q. That one sentence, that's the only sentence that you were to receive in return for your testimony—thirty-five years?

"A. Sir, the way I feel right now, if you-all gave me the death penalty right now, it still wouldn't bring back the three lives that were took.

"MR. GUERINOT: I would ask that the jury be retired right now."

The court instructed the jury to disregard the complained of testimony. Motion for mistrial was overruled.

Appellant was on trial for the capital murder of Robert Edward Howard. Earlier testimony elicited from the witness established that he had served as the intermediary in hiring appellant to kill Howard.

▆ Appellant urges that the complained of testimony ties him to two extraneous murders. Appellant was not directly involved in the other murders by the testimony since the punishment in question related to the punishment assessed the witness. Assuming a logical inference is gleaned that he was involved we find no reversible error. The trial court's instruction to disregard rendered the testimony harmless, especially in light of the overwhelming evidence of appellant's guilt.[2] No reversible error is shown.

In appellant's fifth ground of error, he urges "the trial court erred in denying appellant's motion for mistrial based upon the prosecutor's improper argument and attempt to shift the burden of proof."

The following argument of the prosecutor gives rise to appellant's complaint:

"HANSEN: In our country, it is perfectly all right to call witnesses Judas or pill poppers. You see, that's okay. Nothing wrong with that. We can bad-mouth the State's witnesses all we want to. Isn't that reassuring when you go to sleep at night to know that if you ever had to come down here to testify, somebody can get up and call you names and that's okay? They can call you names because you're honest enough to say something.

"How come Linda Lasiter isn't high today? How come Linda Lasiter didn't just lie to Mr. Guerinot and say that she never did anything if she's such a rotten liar, tramp, slut? That's what he's trying to make you believe. He didn't ask her what she's doing now or where she is now. He could ask her, but he didn't want to know. He's got her statement in front of him. What can he contradict her about from her written statement made three or four months ago? What can he contradict her about? Nothing. Not one thing could he say as to why she said that when now you're saying this. He couldn't do it. 'Didn't you go to

2. In addition to appellant's confession, other direct evidence of appellant's guilt came from eyewitness testimony of a co-defendant and a witness to whom appellant had admitted his guilt. It is not urged that the complained of testimony was harmful to appellant at the punishment stage of the trial. Evidence of appellant's participation in two extraneous murders was offered at the punishment stage of the trial.

Corpus? Didn't you go to the lake?' Big deal. He wanted you to think a person that was doing some drugs would have some kind of problems that he could show you and do something whereby he could impeach her with something."

Appellant's objection, "He is trying to shift the burden to me to prove something in this case. That is clearly wrong and I would object to it," was sustained and the jury was instructed to disregard same. Motion for mistrial was overruled.

Prior to the foregoing argument by the State, appellant's counsel had argued that Linda Lasiter, a witness for the State, was "a barmaid—self admitted pill popper—a woman who lives with every Tom, Dick and Harry who claims to be credible, who wears a little white dress today and tells you folks that she has cleaned up her act. Unbelievable." Counsel further made reference to Lasiter having lived with appellant, left him and returned to appellant, and her inability to "tell exactly what was said."

■ In his brief appellant's argument appears to be bottomed on the premise that the prosecutor's argument constituted a comment on appellant's failure to testify. Thus, at the outset we observe that appellant's objection at trial does not comport with the argument he advances on appeal.

■ Further, we find no merit in the contention that the argument was a comment on the appellant's failure to testify. In order to constitute a violation of Art. 38.08, V.A.C.C.P. and Art. I, Sec. 10, Texas Constitution, the language must be manifestly intended, or of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Johnson v. State*, 611 S.W.2d 649 (Tex.Cr.App.1981); *Griffin v. State*, 554 S.W.2d 688 (Tex.Cr.App.1977). The prosecutor's statement was a legitimate argument that the defense had failed to contradict or impeach Lasiter's testimony. It did not amount to a shifting of the burden of proof nor did it constitute an improper comment on the appellant's failure to testify.

■ In appellant's sixth and seventh grounds of error appellant complains of the court's action in overruling two challenges for cause. The appellant peremptorily challenged both venire members. During the course of the voir dire appellant received two additional peremptory challenges. He does not complain that he was forced to accept any juror who was unacceptable to him. No reversible error is shown. *White v. State*, 629 S.W.2d 701 (Tex.Cr.App.1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982).

In his eighth ground of error, appellant contends he "was denied due process and equal protection of the law, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, by the introduction at the punishment phase of his capital murder trial the testimony of Mark Cook and Louise Luce pertaining to the facts underlying his convictions in Alabama."

A resolution of this issue does not require that we detail the testimony to which appellant alludes. His attack is upon this Court's decisions construing Art. 37.071, V.A.C.C.P., permitting the introduction of evidence underlying an accused's prior conviction as to the issue of "future dangerousness" at the punishment stage of a capital trial. Appellant argues that evidentiary rules designed to allow all "aggravating" evidence in a capital trial, which do not apply to a non-capital trial, deny this appellant due process and equal protection of the law.

In *Davis v. State*, 597 S.W.2d 358 (Tex. Cr.App.1980), cert. denied, 449 U.S. 976, 101 S.Ct. 388, 66 L.Ed.2d 238, after the introduction of defendant's four prior convictions at the punishment stage of a capital case, the State introduced evidence from several witnesses regarding the details of the events which formed the basis of these convictions. On appeal, the defendant complained of the admission of evidence relating to the details of the prior crimes.

This Court rejected defendant's claim in *Davis* regarding details of prior convictions. Prior to and since the *Davis* case the Court has rejected numerous complaints concerning the introduction of evidence of unadjudicated extraneous offenses introduced at the punishment stage of capital cases. *Felder v. State,* 564 S.W.2d 776 (Tex.Cr.App.1978); *Quinones v. State,* 592 S.W.2d 933 (Tex.Cr.App.1980); *Garcia v. State,* 581 S.W.2d 168 (Tex.Cr.App.1979).

The distinction between the punishment stage in a non-capital and a capital case is recognized in appellant's analysis wherein he complains of the introduction of evidence of extraneous offenses on the issue of "future dangerousness." As was recognized and approved by the United States Supreme Court in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Texas death penalty statute directs that the jury answer three questions at the punishment stage of a capital case, one of which is "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." The Supreme Court stated that the jury could consider "whether the defendant had a significant criminal record" and "the range and severity of his prior criminal conduct." By the same token, the Supreme Court recognized that a defendant had great latitude in bringing to the "jury's attention whatever mitigating circumstances he may be able to show." The Court emphasized, "What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine."

■ We reject appellant's contention that the procedure about which he complained denies appellant due process and equal protection of the law.

■ We find our treatment of the foregoing ground of error dispositive of appellant's final ground of error in which he complains of the introduction "of facts of two unadjudicated murders allegedly committed by him" at the punishment stage of the trial.

The judgment is affirmed.

CLINTON, J., not participating.