MEMORANDUM OPINION


No. 04-04-00059-CR

Emanuel Delmar DOUGLAS,
Appellant

v.

The STATE of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2003-CR-1121
Honorable Sharon MacRae, Judge Presiding
 
Opinion by:    Sarah B. Duncan, Justice
 
Sitting:            Alma L. López, Chief Justice
Catherine Stone, Justice
Sarah B Duncan, Justice
 
Delivered and Filed:   August 3, 2005

AFFIRMED
            Emanuel Delmar Douglas appeals the trial court’s judgment convicting him of aggravated
robbery and sentencing him to fifty-five years confinement. We affirm.
            1.         Relying upon Gonzales v. State, 38 Tex. Crim. 62, 41 S.W. 605 (1897), Douglas first
contends the trial court erred in denying his pro se motion for a new trial in his absence. We
disagree. As Douglas recognizes, the right to be present can be waived. See id. at 605. And the right
is deemed waived unless the record establishes that the defendant “desired to exercise [his] right to
be present or that [he] was deprived of such right.” Johnson v. State, 163 Tex. Crim. 101, 103, 289
S.W.2d 249, 251 (1956); see also, e.g., Lacy v. State, 374 S.W.2d 244, 245 (Tex. Crim. App. 1963)
(“There is no showing that appellant desired to be present or was denied such right when the motion
was presented and acted upon by the court.”). “The mere fact that appellant was in custody did not
prevent his attendance. Trial counsel could have requested a bench warrant.” Coons v. State, 758
S.W.2d. 330, 339 (Tex. App.–Houston [14th Dist.] 1988, pet. ref’d). Here the record does not
establish that Douglas desired to exercise his right to be present when his motion for new trial was
heard and acted upon; indeed, he did not even ask for a hearing on his motion, much less the right
to be present at a hearing. 
            2.         Douglas next argues one of his trial counsel rendered ineffective assistance of counsel
by actively representing conflicting interests, i.e., Douglas’s interest in his freedom while out of jail
on bond and his trial counsel’s own interest in his role as the surety on Douglas’s bond


; and harm
must be presumed. We again disagree. Because Douglas did not object in the trial court to his trial
counsel acting as both his attorney and his surety, he “ must demonstrate that an actual conflict of
interest adversely affected his lawyer’s performance.” Cuyler v. Sullivan, 446 U.S. 335, 348, 100
S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980); Monreal v. State, 947 S.W.2d 559, 564 (Tex. Crim. App.
1997). Douglas does not even argue that the alleged conflict of interest had an adverse effect on his
attorney’s performance.
             3.         Douglas next argues the trial court erred in denying his motion for a mistrial after
Detective Garibay, when asked whether he showed a photo line up to a witness, testified
nonresponsively that the witness was in “fear of [Douglas] retaliating, where he had a reputation of
shooting people and rumor had it [he] had killed one person.” We again disagree. Declaring a
mistrial is an extreme remedy appropriate only when “an objectionable event ... is so emotionally
inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced
against the defendant.” Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996). Accordingly,
a trial court’s prompt instruction to disregard will ordinarily cure the error associated with improper
questions and answers, even those regarding extraneous offenses. See Ovalle v. State, 13 S.W.3d
774, 783 (Tex. Crim. App. 2000). So it is here. Garibay’s testimony was “uninvited and
unembellished”; the trial court sustained Douglas’s objection to the testimony and promptly
instructed the jury to disregard it; and this aspect of Garibay’s testimony was not mentioned again.
See Kemp v. State, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (holding trial court’s prompt
instruction to disregard cured error in admitting testimony that appellant had prior felony conviction
when testimony was “uninvited and unembellished” and not mentioned during the remainder of the
trial), cert. denied, 508 U.S. 918 (1993). This is particularly true in light of the overwhelming
evidence of Douglas’s guilt, as set forth below. See Paster v. State, 701 S.W.2d 843, 848 (Tex. Crim.
App. 1985) (holding trial court’s prompt instruction to disregard “rendered the testimony harmless,
especially in light of the overwhelming evidence of appellant’s guilt”), cert. denied, 475 U.S. 1031
(1986). 
            4.         Douglas next argues the evidence is legally and factually insufficient to establish that
he placed the complainant, Thomas Moses, in fear of bodily injury or that Douglas was in the course
of committing a theft. We again disagree.
            Douglas was indicted for the aggravated robbery of Thomas Moses, the assistant manager
of the Quality Pawn Shop. According to Moses, he knew Douglas was going to rob him when he saw
Douglas pause at the entrance to the pawnshop and, on a bright, warm, and sunny day, put on a hood.
Suspicious, Moses took out a gun. As Douglas entered the pawn shop, he said “Drop, Pops, you’re
dead.” When Moses displayed his gun, Douglas exclaimed “Oh, shit!” and then “pulled his gun up
and started firing and turned and started going out the door, continuing to fire until he emptied his
clip and out the door.” Moses testified that one of the bullets passed within a foot of him; and he felt
threatened when Douglas pointed the gun at him. Moses’ testimony was echoed by the pawnshop’s
clerk, Teresa Cook. Douglas’s displaying his gun and pointing it at Moses, in and of itself,
constituted a threat of the required imminent harm necessary to prove this element of aggravated
robbery. See Robinson v. State, 596 S.W.2d 130, 133 n. 7 (Tex. Crim. App. 1980). And entering the
pawnshop – a cash business with registers containing approximately $500.00 to $900.00 – with a
gun in one hand and wearing a hood over his head on a warm and sunny day, commanding Moses
to “drop,” aiming his gun at Moses, discharging all the bullets in the gun, and fleeing the pawnshop
constituted sufficient evidence from which a jury could reasonably infer that Douglas was in the
course of committing theft, even in the absence of a specific demand for or removal of money or
property. See, e.g., Autry v. State, 626 S.W.2d 758, 762 (Tex. Crim. App.) (holding actual
commission of theft is not prerequisite to commission of robbery), cert. denied, 459 U.S. 882 (1982);
Johnson v. State, 541 S.W.2d 185, 187 (Tex. Crim. App. 1976) (holding “[a] verbal demand is not
the talisman of an intent to steal”; “[s]uch intent may also be inferred from actions or conduct”). We
therefore hold the evidence is legally sufficient to permit a rational fact finder to determine beyond
a reasonable doubt that Douglas placed Moses in fear of bodily injury while in the course of
committing theft; and, viewing all the evidence in a neutral light, the State’s evidence is neither so
obviously weak nor so greatly outweighed by contrary proof as to undermine confidence in the jury’s
determination. See Sells v. State, 121 S.W.3d 748, 753-54 (Tex. Crim. App.) (citing Jackson v.
Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)) (legal sufficiency standard), cert.
denied, 540 U.S. 986 (2003); Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004) (factual
sufficiency standard).
            5.         Douglas next argues the evidence is insufficient to support the jury’s enhancement
finding of a previous felony conviction in Illinois because the State failed to show he waived
indictment. We disagree. In a collateral attack such as this, the burden is on the defendant to show
the prior conviction is void. See West v. State, 720 S.W.2d 511, 519 (Tex. Crim. App. 1986), cert.
denied, 481 U.S. 1072 (1987).
             6.         Finally, Douglas argues the trial court erred in admitting two Illinois penitentiary
packets because they contain “improper and invalid certifications” since the “space for filling in the
name of the judge” of the convicting court “is blank.” We disagree. As Douglas recognizes, because
neither party attempted to prove up Illinois law, we presume it is the same as Texas law. Smith v.
State, 683 S.W.2d 393, 406 (Tex. Crim. App. 1984). Until 1991, Texas law required that “the copy
of the judgment and sentence in the pen packet, in order to be admissible as self-authenticated
document(s), ... reflect that the original copy received by TDCJID was certified by the district clerk
of the convicting court.” Reed v. State, 811 S.W.2d 582, 583 (Tex. Crim. App. 1991) (citing Dingler
v. State, 768 S.W.2d 305, 306 (Tex. Crim. App. 1989)). In 1991, however, the court overruled
Dingler. Reed, 811 S.W.2d at 584. Since Reed, a pen packet is admissible if it complies with either
Rule 901 or, for self-authenticating documents, Rule 902. Id. at 586. If the State opts to proceed
under Rule 901, as it did here, all that is required is “extrinsic evidence that the matter in question
is what its proponent claims.” Id. Indeed, this point is so well settled that it is properly the subject
of a memorandum opinion. See, e.g., Carkin v. State, No. 04-01-00582-CR, 2002 WL 1285160, at
*1 (Tex. App.–San Antonio 2002, no pet.) (mem. op.). Douglas does not argue this general
requirement was not met. Rather, in support of his argument, Douglas cites Mitchell v. State, 669
S.W.2d 349, 350-51 (Tex. App.–Houston [14th Dist.] 1984, no pet.). However, Mitchell preceded
Reed and does not correctly reflect Texas law. Accordingly, we overrule Douglas’s seventh and final
point of error.
            The trial court’s judgment is affirmed.
 
Sarah B. Duncan, Justice

Do not publish