**AFFIRM; Opinion Filed April 28, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00529-CR

### JASON MICHAEL SWARM, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-80775-2017**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

Jason Michael Swarm appeals his conviction for aggravated sexual assault of a child under the age of fourteen. In three issues, appellant challenges the sufficiency of the evidence to support his conviction and complains the trial court erred by denying his request for a mistrial and by denying him the right to cross-examine a State's witness. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## BACKGROUND

In 2002, appellant pleaded guilty to indecency with a five-year-old child by sexual contact. Ultimately, appellant served nearly five years in juvenile detention[1] and was required to register as a sex offender for that offense. In July 2008 and again in February 2009, appellant failed to register as a sex offender. He also committed the offense of assault family violence in February 2009. Appellant pleaded guilty to all three offenses in separate proceedings and was sentenced to confinement in all three. In July 2010, appellant was released to a halfway house where he stayed until November 2010.

In late 2010, appellant met T.C., a friend of his sister's, and soon began a relationship with T.C. T.C. was a widow who lived with her daughter L.C. and L.C.'s paternal grandparents, as well as her brother-in-law and his three sons. T.C.'s sister-in-law R.A. often visited her parents (L.C.'s grandparents) with her daughter M.A., but R.A. and her husband would stay at a hotel while M.A. and her siblings stayed overnight at their grandparents' house.

M.A. was born in April 2001. According to R.A., M.A. has high-functioning Asberger's. R.A. testified M.A. has a flat vocal tone, is "not great with eye contact," and is socially awkward.

---

[1] Appellant was fifteen years old at the time of the offense.

In the fall of 2016, during a discussion between R.A. and M.A. about whether to send M.A. to therapy for depression, M.A. confided in her mother that appellant had touched her inappropriately and illegally when she was nine or ten years old. R.A. asked M.A. if she wanted to report appellant's actions, and M.A. said she did not want to do so. R.A. then mentioned that L.C. lived with appellant and T.C. M.A. decided to report, "because I don't want that to happen to [L.C.]." In October 2016, M.A. and her mother reported that appellant had touched her inappropriately approximately five or six years previously. In a forensic interview, M.A. described appellant's inappropriate and illegal conduct, stating it occurred at her grandparents' house.

Appellant was indicted with aggravated sexual assault of a child younger than fourteen years. Appellant pleaded not guilty, and the case proceeded to trial before a jury who found appellant guilty as charged. The trial court assessed appellant's punishment at twenty-five years' confinement, and this appeal followed.

## DISCUSSION

### I. Sufficiency of the Evidence

We begin with appellant's third issue, in which he contends the evidence is insufficient to support his conviction. Appellant argues there is no evidence of one of the elements of the offense and complains the record evidence established he was imprisoned on the date of the offense listed in the indictment. Appellant further

urges the unlikelihood of the location of the offense and challenges the credibility of M.A.

When reviewing whether there is legally sufficient evidence to support a criminal conviction, we view the evidence in the light most favorable to the prosecution, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing any reasonable inferences the evidence might support. *See id.*

A court should measure the sufficiency of evidence by the elements of the offense as defined by the hypothetically correct jury charge for the offense charged. *Horton v. State*, 394 S.W.3d 589, 592 (Tex. App.—Dallas 2012, no pet.) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). As relevant here, a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the child's sexual organ by any means and the child is younger than fourteen years at the time of the offense. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B). The testimony of a child victim alone is sufficient to support a conviction. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd).

–4–

Appellant challenges whether the evidence establishes he caused the penetration of M.A.'s sexual organ. After reviewing the record in the light most favorable to the prosecution, we conclude a rational jury could have found the essential elements of the crime beyond a reasonable doubt. M.A.'s testimony supports the charge in the indictment, which tracked the statutory language of the penal code. *See* PENAL CODE ANN. § 22.021(a)(1). As long as a child communicates to the factfinder that the touching occurred on a part of the body within the definition of the statute, the evidence is sufficient. *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Lee*, 186 S.W.3d at 655 (child testimony alone is sufficient to support conviction).

Appellant next challenges the sufficiency of the evidence to support the date of the offense. He argues the evidence shows he was not released from prison until July 2010, so he could not have committed the offense as alleged to have been committed on June 1, 2010.

The State is not required to allege a specific date in the indictment. *Santibanez v. State*, No. 05-18-00843-CR, 2019 WL 5615150, at *2 (Tex. App.—Dallas Oct. 30, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Sledge v. State*, 953 S.W.2d 253, 255 (Tex. Crim. App. 1997) (en banc.)). It is well-settled the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period. *Id.* Here,

the indictment alleged appellant committed the sexual act "on or about the 1st day of June, 2010." The grand jury returned the indictment on March 16, 2017. There is no statute of limitations for aggravated sexual assault of a child. *See* CRIM. PROC. ANN. art. 12.01(1)(B). Therefore, the State was required to prove the offense occurred before March 16, 2017.

The record reflects M.A. made an outcry to her mother in October 2016 that appellant had touched her illegally and inappropriately five or six years previously. When interviewed by the forensic interviewer, M.A. reported the assault occurred when she was nine or ten years old and in the fourth or fifth grade. The record established M.A. was born in April 2001, so she would have been nine years old in 2010 and ten years old in 2011. Although appellant testified he did not meet M.A. until 2013, a rational juror could have credited M.A.'s testimony over his. Thus, a rational jury could have found appellant abused M.A. prior to presentment of the indictment and within the statute of limitations.

Appellant makes other arguments that go towards the weight of the evidence and M.A.'s credibility. He challenges the sufficiency of the evidence to support the location of the offense, arguing he was unlikely to have the opportunity to abuse M.A. in the family room of a large house in which as many as ten family members lived. Appellant also points out inconsistencies in M.A.'s testimony and her motive for reporting the abuse. As for appellant's arguments regarding M.A.'s credibility

and the weight of the evidence, the jury assessed her credibility, weighed the evidence, and found in favor of the State. *See Jackson*, 443 U.S. at 319.

Accordingly, we overrule appellant's third issue.

## II. Denial of Mistrial

In his first issue, appellant argues the trial court erred in failing to grant a mistrial after a witness testified about inadmissible extraneous offense information.

During direct examination, the prosecutor asked R.A. to describe how she decided to report the inappropriate conduct M.A. had told her and what she did to report it.

> Q: Um, and tell me a little bit about how you decided to go report it and what you did?
>
> A: Um, I had to figure out where I needed to go. Do I go to Frisco, because it happened in Plano. Do I go to the Plano Police Department. Or do I go to Garland, because at the time, I think, he lived in Garland. He was on probation for something I'm not sure.

Appellant's counsel objected to R.A.'s testimony and asked for "a mistrial and at the very least a limiting instruction on what this witness has just testified about." The trial court excused the jury and outside the presence of the jury, the trial court denied the request for a mistrial but, "I'll instruct the jury to disregard the statements." Appellant's counsel objected to the denial of the request for mistrial as follows:

> DEFENSE COUNSEL: I object to the Court's failure to grant a mistrial because of the witness having stated to the jury that the defendant was on probation. That is a fact that regardless of the Court's instruction,

the jury will not put that out of their minds. It's going to leave questions in their minds that cannot be answered –

COURT: I think what you're doing is objecting to my ruling now.

DEFENSE COUNSEL: Yes, I'm objecting to your ruling and I'm objecting to the fact that the witness brought up in front of the jury that he was on probation. And there is no curative instruction that will rectify that harm, that will rectify the fact that the jury heard it. Any curative instruction will not remove that sentence from their minds. And a mistrial should be granted.

COURT: Well, I'm not changing my ruling. I'm going to deny the mistrial. I'm going to instruct the jury to disregard the last statement of the witness.

When the jury returned, the trial court instructed the jury to disregard the R.A.'s statement that was in response to the State's last question "for all purposes."

We review a trial court's ruling on a motion for mistrial for abuse of discretion. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* We may not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *See id.*

A mistrial is appropriate in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice [would] remain[]" after less drastic

alternatives are explored. *Id.* Less drastic alternatives include instructing the jury "to consider as evidence only the testimony and exhibits admitted through witnesses on the stand," and, questioning the jury "about the extent of any prejudice," if instructions alone do not sufficiently cure the problem. *Id.*

To determine whether prejudicial testimony warrants a mistrial, we consider (1) the severity of the misconduct and magnitude of the prejudicial effect, (2) the curative measures taken, and (3) the certainty of conviction absent the misconduct. *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004).

Here, R.A.'s statement about her belief that appellant was on probation in October 2016 was not so inherently inflammatory as to be incapable of being cured by an instruction to disregard. *See Fernandez v. State*, No. 05-16-00355-CR, 2017 WL 4987668, at *2 (Tex. App.—Dallas Nov. 2, 2017, no pet.) (mem. op.) (comment about appellant breaking in at gunpoint cured by prompt instruction to disregard where jury aware of volatile nature of appellant's relationship with testifying witness). The record shows the State's question of R.A. was how she decided to report her daughter's outcry and the steps she took. Nothing about the question appears designed to elicit any commentary on appellant's probationary status. R.A.'s response includes mention of appellant's probationary status as part of her thought process on which police department to contact, not to somehow inflame the minds of the jury. The prejudicial effect of the statement was minimal in light of

appellant's own testimony on direct and cross-examination regarding his criminal history.

The trial court took prompt curative measures by instructing the jury not to consider the testimony "for all purposes." In general, a prompt instruction to disregard cures the prejudicial effect of inadvertent references to extraneous offenses. *See Paster v. State*, 701 S.W.2d 843, 848 (Tex. Crim. App. 1985) (an accomplice witness's inadvertent reference to extraneous murders was curable with an instruction to disregard). In fact, it is well-settled that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992).

As to the certainty of conviction, the jury heard M.A.'s testimony describing appellant's inappropriate and illegal contact with her, as well as the testimony of the forensic interviewer whose description of M.A.'s outcry to her was consistent with M.A.'s testimony. Although M.A. was unable to state whether the conduct occurred when she was nine or ten years old, her description of appellant's conduct was substantially the same as that reported by the forensic interviewer. Through appellant's own testimony, the jury heard about his plea of guilty as a juvenile to indecent contact with a five-year-old child. The jury also heard appellant's

–10–

testimony denying the underlying conduct in this case and denying ever meeting M.A. until 2013, as well as the testimony of appellant's mother that appellant had denied committing the offense to her. While the evidence is not overwhelming, appellant's conviction was reasonably certain absent the complained-of statement.

Accordingly, we conclude the trial court did not abuse its discretion in denying a mistrial and overrule appellant's first issue.

## III. Cross-Examination Regarding Prior Involvement with CPS

In his second issue, appellant argues the trial court erred by denying him the opportunity to question R.A. regarding the multiple contacts M.A. had with Child Protective Services (CPS) prior to her outcry in October 2016. Appellant urges this evidence should have been presented to the jury to show that M.A. met with CPS one month before her outcry where she was questioned by CPS about any possible abuse, but that she did not make any allegation of emotional, physical, or sexual abuse at that time. Appellant argues he would have used this evidence to cross-examine and impeach M.A. The State responds that appellant failed to preserve his argument because, although his counsel made a bill of proof, his counsel failed to articulate the legal basis for that offer.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. CONST., amend. VI. This right is made applicable to the states by the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403

–11–

(1965). Cross-examination provides the defendant an opportunity to test the believability of a witness and the truth of his testimony. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Although the constitutional provision guarantees criminal defendants the right to confront and cross-examine witnesses, this right is not absolute. *See Porter v. State*, 578 S.W.2d 742, 745 (Tex. Crim. App. 1979). The trial court maintains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Henley v. State*, 493 S.W.3d 77, 95 (Tex. Crim. App. 2016).

We review a trial court's decision to limit a defendant's cross-examination under an abuse of discretion standard. *Matchett v. State*, 941 S.W.2d 922, 940 (Tex. Crim. App. 1996), *cert. denied*, 521 U.S. 2487 (1997). We will reverse the court's ruling when the court acts arbitrarily and unreasonably, without reference to guiding rules or principles of law, and appellant has been harmed. *Love v. State*, 861 S.W.2d 899, 901–904 (Tex. Crim. App. 1993).

The record reflects that defense counsel requested to take up some matters outside the jury's presence. Once the jury was excused, defense counsel stated, "we need to make the bill before I can make the motions that I would normally make at this point." Then, outside the presence of the jury, defense counsel questioned R.A. regarding whether M.A. had been interviewed by CPS in the past and the content of those interviews. R.A. testified M.A. had been interviewed by CPS regarding

–12–

matters unrelated to her outcry. According to R.A.'s testimony, the CPS interviews of M.A. were usually "one-on-one," R.A. was not present during the interviews, and R.A. was not aware of what was discussed other than, "usually when they were asking questions, it was about the topic that they were investigating."

After the cross-examination of R.A., the court discussed whether defense counsel could cross-examine M.A. on whether she was depressed at the time of her outcry, but there was no discussion regarding impeaching M.A. on the content of the CPS interviews.

Even assuming appellant's issue was properly preserved for our review, defense counsel's questioning of R.A.'s mother did not reveal she had any personal knowledge of the contents of M.A.'s interviews with CPS. *See* Tex. R. Evid. 602 (requiring sufficient evidence to support finding witness has personal knowledge of matter before witness may testify regarding that matter). Indeed, the record reflects the following exchange:

> DEFENSE COUNSEL: Are you aware that in some of the interviews with Marissa, there's an expressed statement that she made no outcry of sexual abuse?
>
> R.A.: No.
>
> DEFENSE COUNSEL: So you're not aware that on September the 2nd of 2016, less than a month before the outcry in this case, CPS interviewed Marissa and she said Marissa did not make an outcry of emotional, physical, or sexual abuse. Did you realize that this existed?
>
> R.A.: No.

R.A. did not testify regarding M.A.'s lack of, or denial of, any allegation of abuse to CPS, and thus, the record does not contain any of the testimony appellant argues he would have used to impeach M.A. Moreover, the record reflects defense counsel questioned M.A. regarding her interviews with CPS, specifically asking her whether she remembered ever saying anything about appellant's assault in an interview with CPS and how many times she was interviewed by CPS. M.A. testified she was interviewed several times by CPS and testified she was never asked about whether she was sexually abused.

Accordingly, we cannot conclude that the trial court abused its discretion and overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47
190529F.U05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JASON MICHAEL SWARM,
Appellant

No. 05-19-00529-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-80775-
2017.
Opinion delivered by Justice
Schenck. Justices Osborne and
Reichek participating.


Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 28th day of April, 2020.